JAMES S. COON (Oregon State Bar No. 771450)
jcoon@stc-law.com
SWANSON THOMAS & COON
820 S.W. Second Avenue, Ste. 200
Portland, OR 97204
Tel:    (503) 228-5222
Fax:    (503) 273-9175
Attorneys for Plaintiff Jeffrey Poole

LEIGH ANN COLLINGS-TIFT (Oregon State Bar No. 054732)
ltift@littler.com
LITTLER MENDELSON, P.C.
600 University Street, Suite 3200
Seattle, Washington 98101-3122
Tel:    (206) 623-3300
Fax:    (206) 447-6965
Attorneys for Defendant

[Additional Plaintiffs' and Defendant's Attorneys follow
signature page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| JEFFREY POOLE, WINSOME P. CARTER, JAMES C. HOWELL, JEFFREY KEMP, ANDREA LOUGHLIN, HENRY V. M. MULTALA, ANTHONY PALUMBO, MARY O'REILLY, BURKHARD SPRING, DAVID BACHRACH, PETER R. GARRISON, ROBERT TRAITZ, EDWARD FRANCE, EDWARD C. REINHART, MICHAEL WENDLING and RICHARD J. TESTA, JR., on behalf of themselves, the general public, and all others similarly situated, | **CASE NO. CV  06-1657  HA** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** <br><br> Hon. Ancer L. Haggerty |
| Plaintiffs, | |
| vs. | |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, | |
| Defendant. | |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

I. INTRODUCTION ......................................................................................................1

II. PROCEDURAL BACKGROUND ............................................................................4

III. TERMS OF THE PROPOSED SETTLEMENT .....................................................6

IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT...........11

V. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.........17

VI. CONCLUSION.......................................................................................................22

.

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Adkins v. Labor Ready, Inc.
303 F.3d 496 (4th Cir. 2002) ................................................................................10

Ansoumana v. Gristede's Operating Corp.,
201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................18

Baas v. Dollar Tree Stores, Inc.,
2007 U.S. Dist. LEXIS 65979, *13 (N.D. Cal. Aug. 29, 2007) ...........................18

Bahramipour v. Citigroup Global Markets Inc.,
Case No. 04-4440 (N.D. Cal.).....................................................................3, 11, 17

Bouder v. Prudential Financial, Inc.
2008 U.S. Dist. LEXIS 25103 (D.N.J. March 27, 2008).......................................18

Class Plaintiffs v. Seattle,
955 F.2d 1268 (9th Cir. 1992) ..............................................................................11

Ellis v. Edward D. Jones & Co., L.P.,
527 F.Supp.2d 439 (W.D. Pa. 2007) ....................................................................18

In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation,
2003 U.S. Dist. LEXIS 25717, *12-31 (D. Or. May 19, 2003) ...........................17

In Re: Farmers Overtime Pay Litigation,
300 F. Supp. 2d 1020................................................................................................15

Gautreaux v. Pierce,
690 F.2d 616 (7th Cir. 1982) ................................................................................12

Glass v. UBS Financial Services, Inc.,
Case No. 06-4068 (N.D. Cal.) ..............................................................................17

Hanlon v. Chrysler Corp.,
150 F.3d 1011 (9th Cir. 1998) .........................................................13, 19, 20, 21

Hein v. PNC Financial Services Group, Inc.,
511 F. Supp. 2d 563 (E.D. Pa. 2007) ..................................................................14

Kinney Shoe Corp. v. Vorhes
564 F.2d 859 (9th Cir. 1977) ................................................................................10

Lerwill v. Inflight Motion Pictures, Inc.,
582 F.2d 507 (9th Cir. 1978) ...................................................................................21

Levy v. Verizon Information Servs., Inc.
498 F. Supp. 2d 586 (E.D.N.Y. 2007) ....................................................................14

Linney v. Cellular Alaska Partnership,
151 F.3d 1234 (9th Cir. 1998) ...............................................................................12

Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,
244 F.3d 1152 (9th Cir. 2001) ..........................................................................20, 21

Lockwood Motors v. General Motors Corp,
162 F.R.D. 569 (D. Minn. 1995).............................................................................21

Martinez v. Phillips Petroleum Co.,
283 F. Supp. 514 (D. Id. 1968) ...............................................................................16

Miller v. Farmers Insurance Exchange,
481 F.3d 1119 (9th Cir. 2007) ....................................................................14, 15, 17

Officers for Justice v. Civil Service Comm'n,
688 F.2d 615 (9th Cir. 1982) ...........................................................................11, 12

Scott v. Aetna Services, Inc.,
210 F.R.D. 261 (D. Conn. 2002) ......................................................................17, 18

Six (6) Mexican Workers v. Arizona Citrus Growers,
904 F.2d 1301 (9th Cir. 1990) ...........................................................................7, 11

Steinberg v. Morgan Stanley & Co. Inc.,
Case No. 06-2628 (S.D. Cal.) ..................................................................................17

Takacs v. A.G. Edwards & Sons, Inc.,
444 F. Supp. 2d 1100 (S.D. Cal. 2006).....................................................................14

In re Traffic Executive Association-Eastern Railroads,
627 F.2d 631 (2nd Cir. 1980).....................................................................................12

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
396 F.3d 96 (2nd Cir. 2005) .......................................................................................13

Williams v. MGM-Pathe Communication Co.
129 F.3d 1029 (9th Cir. 1997) ..................................................................................11

**STATE CASES**

Pachter v. Bernard Hodes Group, Inc.,
10 N.Y.3d 609 (2008) ...............................................................................................14

**FEDERAL STATUTES**

28 U.S.C. § 1331......................................................................................................6

28 U.S.C. § 1332......................................................................................................6

28 U.S.C. § 1367......................................................................................................6

Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ...........................................1

29 U.S.C. § 216(b) ......................................................................................... passim

29 U.S.C. § 260........................................................................................................16

Fed. R. Civ. P. 23(a)(1) ..........................................................................................19

Fed. R. Civ. P. 23(a)(2) ..........................................................................................19

Fed. R. Civ. P. 23(a)(3) ..........................................................................................20

Fed. R. Civ. P. 23(a)(4) ..........................................................................................20

Fed. R. Civ. P. 23(b)(3) .................................................................................. passim

Fed. R. Civ. P. 23(e) ...............................................................................................12

Fed. R. Civ. P. 53(a)(1)(A), ..............................................................................4, 22

**SECONDARY AUTHORITIES**

Manual for Complex Litigation, Third § 30.41, pp. 236-37 ...................................12

Manual for Complex Litigation, Third § 30.42, p. 240 .........................................13

Conte & Newberg, Newberg on Class Actions
(4th Ed. 2002), § 11:25 at pp. 38-39. ...................................................................12

Conte & Newberg, Newberg on Class Actions
(4th Ed. 2002), § 10:15 at p. 512 .......................................................................7, 8

U.S. Department of Labor Opinion Letter, November 27, 2006 ...........................13

I.    **INTRODUCTION**

Plaintiffs Jeffrey Poole, Winsome P. Carter, James C. Howell, Jeffrey Kemp, Andrea Loughlin, Henry V. M. Multala, Anthony Palumbo, Mary O'Reilly, Burkhard Spring, David Bachrach, Peter R. Garrison, Robert Traitz, Edward France, Edward C. Reinhart, Michael Wendling and Richard J. Testa, Jr. (collectively, "Plaintiffs" or "Class Representatives") and Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch" or "Defendant") jointly move this Court for preliminary approval of a proposed class action settlement ("Settlement") worth up to $43.5 million. As the first step in a two-part preliminary approval process, the instant motion seeks the Court's preliminary approval of the Settlement's terms *other than* the allocation of proceeds among the class members in different states with different applicable laws. As more fully described below, the motion proposes that the Court appoint a Special Master to assist the parties and advise the Court with respect to the allocation formula, following which Plaintiffs will make a further motion to approve the allocation formula and authorize the mailing of the class notice.

The proposed Settlement would resolve the instant case as well as 10 other wage and hour class actions that are pending against Merrill Lynch in various District Courts throughout the United States, which allege that Merrill Lynch owes its Financial Advisors overtime pay because Financial Advisors do not meet the test for "exempt" status under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") or under applicable state laws. In addition, Plaintiffs allege that Merrill Lynch illegally deducted certain business-related expenses from the compensation of its Financial Advisors (such as losses due to trading errors and the cost of administrative support), in violation of applicable state law. Merrill Lynch vigorously denies Plaintiffs' allegations. Merrill Lynch contends that it properly classified its Financial Advisors

as exempt employees and at all times paid Plaintiffs and other Class Members in accordance with applicable federal and state law.

For purposes of the proposed Settlement, the Court would conditionally certify a "Collective Group" with respect to the first claim in Plaintiffs' First Amended Consolidated and Class Action Complaint ("FAC") pursuant to 29 U.S.C. § 216(b). The Collective Group would be comprised of:

> All individuals who file a consent to join the Settlement and were employed by Merrill Lynch in any State of the United States (except for California), or in Washington, D.C. or Puerto Rico, in any of the "Covered Positions" defined below, at any time during the period that begins on the earlier of the following dates and continues through December 31, 2007: (a) three years prior to the date of entry of the order granting preliminary approval of the Settlement; or (b) if applicable, three years prior to the date that individual filed a consent to join any lawsuit that is the subject of the Settlement.

> "Covered Positions" means the following positions: (a) Financial Advisor (sometimes referred to as "Financial Consultant" and including those who perform the duties of a Financial Advisor simultaneously with a supervisory role); (b) Professional Development Program ("PDP") Financial Advisor; (c) Paths of Achievement ("POA") Financial Advisor; and (d) Financial Advisor Trainee.

The Court would also conditionally certify, for settlement purposes only, a "Class" with respect to the second and third claims in the FAC pursuant to Fed. R. Civ. P. 23(b)(3). The Class would be comprised of:

> All individuals who were employed by Merrill Lynch in any State of the United States (except for California), or in Washington, D.C. or Puerto Rico, in any Covered Position during the applicable Class Period, where "Class Period" means the limitations period for wage claims in the particular jurisdiction(s) where the Class member worked.

This Settlement is the product of nearly two years of intense, arm's-length settlement negotiations, facilitated by mediator Mark S. Rudy, one of the leading mediators in the field of wage and hour class actions. Plaintiffs are represented by law firms that have considerable

experience in this area of law and in complex class actions in general. Before entering into settlement discussions, both sides were thoroughly familiar with the applicable facts as well as the strengths and weaknesses of their respective positions. Both sides believe the Settlement represents a reasonable compromise in light of the risks and costs of further litigation.

To ensure that the allocation of settlement proceeds fairly and reasonably reflects the applicable laws of more than 50 jurisdictions – some of which are more favorable to employees than others – the parties respectfully request that the Court appoint the Hon. Edwin J. Peterson, retired Chief Justice of the Oregon Supreme Court, as Special Master to review the parties' proposed allocation of Settlement proceeds and to issue an independent written recommendation to the Court regarding whether the proposed allocation is fair and reasonable.[1] Justice Peterson has agreed to accept this appointment. See Declaration of the Hon. Edwin J. Peterson, filed herewith. Appointing Justice Peterson to serve in this role would ease the burden on the Court and may satisfy potential objectors, if any, that the allocation is fair to the class as a whole.

Accordingly, the parties respectfully request that the Court: (1) grant preliminary approval of the Settlement (except for the as-yet-undetermined allocation formula); (2) conditionally certify, for settlement purposes only, the Collective Group with respect to Plaintiffs' first claim pursuant to 29 U.S.C. § 216(b); (3) conditionally certify, for settlement purposes only, the Class with respect to Plaintiffs' second and third claims pursuant to Fed. R. Civ. P. 23(b)(3); (4) order the Plaintiffs, Merrill Lynch, and the class members not to proceed

---

[1]    Appointing a Special Master to serve in this role is common in these cases. For example, in another nationwide settlement involving financial advisors employed by Citigroup Global Markets Inc., the District Court appointed retired U.S. District Judge Charles A. Legge to serve as Special Master to review the parties' proposed allocation. See "Stipulation and Order Appointing the Hon. Charles A. Legge (Ret.) as Special Master," Bahramipour v. Citigroup Global Markets Inc., Case No. 04-4440 (N.D. Cal.), dated February 21, 2007 (attached as Exhibit 5 to the Declaration of James F. Clapp, filed herewith).

with further litigation in any of the pending actions that are the subject of the Settlement pending

the Court's decision on final approval of the Settlement; (5) order putative class members not to

file any new actions asserting claims that are being released under the Settlement (except for

individual FLSA claims by those who do not release such claims by opting in to the Settlement)

pending the Court's decision on final approval of the Settlement; and (6) appoint the Hon. Edwin

J. Peterson (Ret.) as Special Master, pursuant to Fed. R. Civ. P. 53(a)(1)(A), to review and make

a recommendation regarding the allocation of settlement proceeds.  Upon receipt of Justice

Peterson's written recommendation, the parties will return to this Court and ask the Court to:  (1)

incorporate the proposed allocation into the class notice; (2) approve and authorize the mailing of

the notice; and (3) set a final fairness hearing.

## II.    PROCEDURAL BACKGROUND

On February 22, 2006, a putative class and collective action lawsuit entitled Edward

France v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, Case No. 2:06-CV-00782, was

filed in the U.S. District Court for the Eastern District of Pennsylvania on behalf of Merrill

Lynch's Financial Advisors in the states of Pennsylvania and New Jersey.  Subsequently, ten

(10) other putative class and/or collective action lawsuits were filed against Merrill Lynch in

various U.S. District Courts, including this Court:  Jeffrey Poole v. Merrill Lynch, Pierce, Fenner

& Smith Incorporated, U.S. District Court, District of Oregon, Case No. 06-CV-1657 HA;

Anthony Palumbo and Mary O'Reilly v. Merrill Lynch, Pierce, Fenner & Smith Incorporated,

U.S. District Court, Eastern District of New York, Case No. 06-CV-02104; Edward C. Reinhart

v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, U.S. District Court, Eastern District of

Washington, Case No. CV-06-3038; Andrea Loughlin and Jeffrey Kemp v. Merrill Lynch,

Pierce, Fenner & Smith Incorporated, U.S. District Court, Eastern District of New York, Case

No. 06-CV-02835; David Bachrach v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, U.S. District Court, District of New Jersey, Case No. 06-CV-02786; Peter R. Garrison v. Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated, U.S. District Court, District of New Jersey, Case No. 06-CV-03553; Robert Traitz v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, U.S. District Court, District of New Jersey, Case No. 06-CV-03788; James Howell, Burkhard Spring, Henry V.M. Multala and Winsome Carter  v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, U.S. District Court, Eastern District of New York, Case No. CV-06-04872; Michael Wendling v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, U.S. District Court, Eastern District of Texas, Case No. 06-CV-06-CV-458; and Richard J. Testa, Jr. v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, U.S. District Court, Southern District of New York, Case No. 07-CV-8320.

    As part of the Settlement, the Plaintiffs in these eleven (11) lawsuits (collectively, the "Actions") filed one consolidated complaint in this case. See FAC, Docket No. 35.  The FAC alleges claims for unpaid overtime under the FLSA and under applicable state law on behalf of all individuals who were employed by Merrill Lynch in any of the following positions ("Covered Positions") during the applicable statutes of limitation:   (1) Financial Advisor (sometimes referred to as "Financial Consultant" and including those who perform the duties of a Financial Advisor simultaneously with a supervisory role); (2) Professional Development Program ("PDP") Financial Advisor; (3) Paths of Achievement ("POA") Financial Advisor; and (4) Financial Advisor Trainee. The FAC also alleges state law claims for reimbursement of business-related expenses on behalf of individuals employed in Covered Positions during the applicable limitations periods.

This Court's jurisdiction is premised on federal question jurisdiction with respect to the FLSA claims and both Class Action Fairness Act ("CAFA") diversity jurisdiction and supplemental jurisdiction with respect to the state law class claims.  28 U.S.C. §§ 1331-1332, 1367.   Under CAFA, this Court has original jurisdiction over any class action in which the amount in controversy exceeds $5 million and any class member's citizenship is different from the defendant's citizenship. 28 U.S.C. § 1332(d)(2). The parties agree on the following facts: (1) the amount in controversy is over $5 million, as there are approximately 21,946 members in the proposed class and the maximum value of the Settlement is $43.5 million; (2) Merrill Lynch is incorporated in Delaware and has its principal place of business in New York; and (3) several thousand class members are not citizens of Delaware or New York and instead are citizens of other states in the United States, including the State of Oregon.   Furthermore, none of the grounds for declining jurisdiction under Section 1332(d) of CAFA are present.  The parties also agree that the Court has supplemental jurisdiction over the state law claims under Section 1367 because the FLSA and state law claims stem from a common nucleus of operative facts – i.e., Merrill Lynch's compensation of persons in the Covered Positions.

If the Settlement is approved by this Court, this lawsuit and all of the other Actions will be dismissed with prejudice.

## III.    TERMS OF THE PROPOSED SETTLEMENT

The terms of the proposed Settlement are set forth in the "Joint Stipulation of Settlement of Class Action and Release" ("Stipulation") and the "Amendment to the Joint Stipulation of Settlement of Class Action and Release" ("Amendment"), filed herewith.   There are no undisclosed side agreements between Plaintiffs and Merrill Lynch.  See Declaration of James F. Clapp, ¶ 3. The essential terms of the Settlement are as follows:

1.    The parties have stipulated to: (a) collective action certification for settlement purposes only of the Collective Group with respect to Plaintiffs' first claim for violation of the FLSA pursuant to 29 U.S.C. § 216(b); and (b) class certification for settlement purposes only of the Class with respect to Plaintiffs' claims for violation of state overtime and wage deduction laws pursuant to Fed. R. Civ. P. 23(b)(3).

2.    Subject to the occurrence of the Effective Date, Merrill Lynch will pay up to $43,500,000 (the "Maximum Settlement Amount") to satisfy: (a) the timely, qualifying claims of class members; (b) Plaintiffs' attorney's fees and litigation costs; (c) the enhanced awards to the Class Representatives; and (d) the cost of claims administration (all subject to approval by the Court). Stipulation, Section V, ¶ 1.14.

3.    If some of the Class and Collective Group members do not file claims, or if the Court awards less than the requested amounts in attorney's fees, litigation costs, or Class Representative enhancements, the unclaimed and/or unawarded amounts will be split between Merrill Lynch and the class members who have filed claims as follows: The Stipulation defines "Net Settlement Consideration" as $43,500,000 less the Court-awarded attorney's fees, litigation costs, enhancements, and the costs of claims administration. Merrill Lynch has guaranteed that it will pay out at least 70% of the Net Settlement Consideration to class members who have filed timely, qualifying claims; any remaining unclaimed or unawarded funds will remain the property of Merrill Lynch. See Amendment, ¶ 1.17.[2]

---

[2]    This is the most favorable treatment of unclaimed funds that Plaintiffs were able to negotiate, and there is ample authority for such an approach. In Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1307 (9th Cir. 1990), the Ninth Circuit observed that "[m]ost class actions result in some unclaimed funds." The court went on to discuss several possible alternatives for disposing of those funds, including cy pres, escheat to the government, reversion to the defendant, and pro rata distribution of the unclaimed funds to the class members who had been located. Id. Similarly, Newberg on

4.     The parties have stipulated to the appointment of the Hon. Edwin J. Peterson (Ret.) as a Special Master to assist the parties in developing a fair formula for the allocation of settlement proceeds to class members. Stipulation, Section V, ¶¶ 1.39, 2.1.1, 2.3.4.     Upon receipt of Justice Peterson's written recommendations, the parties will return to this Court and ask the Court for permission to incorporate Justice Peterson's recommendations concerning the allocation formula into the class notice.

5.     Each class member will receive a "Notice to Class Members Regarding Pendency of a Class and Collective Action," in the form attached as Exhibit B to the Stipulation ("Class Notice"). The parties will retain the professional claims administration firm of Rust Consulting, Inc. (the "Claims Administrator") to mail the Class Notice and to perform other required claims administration services. Stipulation, Section V, ¶¶ 1.1, 2.4.1-2.4.9. The Class Notices will be sent, postage pre-paid, via first class mail to the last known address of each class member. Stipulation, Section V, ¶ 2.4.1. Prior to mailing the Class Notices, the Claims Administrator will consult the United States Postal Service's National Change of Address Database to review the accuracy of – and update, if possible – each class member's mailing address.     Stipulation, Section V, ¶¶ 1.34, 2.4.4.     In the event that any Class Notice is returned to the Claims Administrator by the United States Postal Service as undeliverable, the Claims Administrator will perform a standard skip trace in an effort to locate the current address of the class member

---

Class Actions (4th Ed. 2002), § 10:15, p. 512 explains: "In a settlement context, subject to court approval, counsel for the parties have great flexibility in negotiating an agreement concerning how any unclaimed balance of an aggregate class recovery should be distributed. The parties may agree that any surplus funds revert to the defendant, or they may agree that such surplus funds should be distributed in a designated manner to class members who have filed individual claims, or they may agree that the distribution of the surplus funds for the benefit of the class will be determined by the court or determined by the parties subject to court approval."

and, if such an address is located, re-send the Class Notice and other Settlement documents to the new address. Stipulation, Section V, ¶ 2.4.8. Class members will have 90 days to respond to the Class Notice. Stipulation, Section V, ¶¶ 1.23. Twenty days before the response deadline, the Claims Administrator will send a reminder postcard to each class member from whom it has not yet received a response. Stipulation, Section V, ¶ 2.4.9. In response to the Class Notice, class members may elect to: (1) return a claim form and consent to join the Settlement; (2) object to the Settlement; or (3) opt out of the Settlement. Class members who opt out of the Settlement will not receive a settlement payment but also will not be bound by the release of claims. Stipulation, Section V, ¶ 2.5.2.

      6.    Class members who do not opt out of the Settlement are deemed to release the following claims: All known and unknown state law claims accruing during the applicable limitations period for the state(s) or other included jurisdictions in which the individual was employed by Merrill Lynch, up to and including December 31, 2007, based on the following categories of allegations: (a) any and all claims asserted in the Actions which arose under the law of any state or other included jurisdiction; (b) any and all claims under applicable state or other included jurisdiction's laws for the failure to pay any type of overtime wages in a Covered Position; (c) any and all claims which arose under applicable state or other included jurisdiction's laws for the failure to provide meal, break, and/or rest periods in a Covered Position; (d) any and all claims under applicable state or other included jurisdiction's laws stemming from or based on the alleged misclassification of employees in Covered Positions as exempt employees; (e) any and all claims alleging unlawful deductions from wages for expenses or costs related to the class member in a Covered Position (including without limitation claims for reimbursement of costs spent on support staff, any advertising or promotional expenses,

seminar costs, training costs, telephone charges, ticket charges, mailing costs, subscriptions, office supplies, office equipment, desk fees, license registration fees, trading errors, client fees, costs to settle disputes with customers, or account fees for delinquent customer accounts) under applicable state or other included jurisdiction's laws; (f) any and all claims, including without limitation state or other included jurisdiction's statutory and common law claims, for failure to reimburse, indemnify, cover or pay for business costs and/or deductions of the class member in a Covered Position (including without limitation claims for reimbursement of costs spent on support staff, any advertising or promotional expenses, seminar costs, training costs, telephone charges, ticket charges, mailing costs, subscriptions, office supplies, office equipment, desk fees, license registration fees, trading errors, client fees, costs to settle disputes with customers, or account fees for delinquent customer accounts); and (g) any and all claims for penalties, liquidated damages, punitive damages, interests, attorneys' fees, costs or equitable relief in connection with such claims. Stipulation, Section V, ¶¶ 1.35, 1.45, 2.7.1. In addition, class members who file consents to join under the FLSA will release their FLSA claims. Stipulation, Section V, ¶ 1.35.[3]

---

[3]     Under the FLSA, a class member cannot be bound by a judgment unless he or she files a consent to join the lawsuit (sometimes referred to as "opting in"). 29 U.S.C. § 216(b). Kinney Shoe Corp. v. Vorhes, 564 F.2d 859, 862 (9th Cir. 1977) (Under the FLSA, "[n]o member of the class is either bound by the class action adjudication or barred from filing an individual claim within the limitations period unless he opts to become a party.") Consistent with section 216(b), the Settlement provides that only those class members who affirmatively opt-in to the Settlement will release their claims under the FLSA. However, to protect Merrill Lynch from serial collective action lawsuits based on identical facts, those class members who do not file a consent to join the lawsuit but also do not opt out of the Settlement will waive their procedural right to bring or participate in a collective action under the FLSA. Stipulation, Section V, ¶ 1.35; see Adkins v. Labor Ready, Inc., 303 F.3d 496, 502 (4th Cir. 2002) (an individual may waive his procedural right to pursue a collective action under the FLSA). Nevertheless, this waiver does not prevent a class member from bringing an individual lawsuit under the FLSA.

7.    Consistent with the Ninth Circuit benchmark, Plaintiffs' attorneys will request attorney's fees equal to 25% of the Maximum Settlement Amount, plus litigation costs not to exceed $125,000.    Stipulation, Section V, ¶¶ 1.14, 2.8.1.    See Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (holding that the benchmark attorneys' fee award in common fund cases is 25% of the fund); Williams v. MGM-Pathe Communications Co., 129 F.3d 1026 (9th Cir. 1997) (class counsel's attorney's fee should be calculated based on the entire amount made available to the class, not on the amount actually claimed by the class). In addition, Plaintiffs' attorneys will request enhanced awards not to exceed $20,000 for each Plaintiff as compensation for his or her efforts in this case, including the burden and risks associated with bringing this action publicly.    Stipulation, Section V, ¶ 2.8.2.[4] All of these amounts are subject to the Court's approval at the final fairness hearing.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

There is a strong judicial policy favoring settlements, particularly in complex class actions.    Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).    The "universal standard" in evaluating the fairness of a settlement under Fed. R. Civ. P. 23(e) is whether the settlement is "fundamentally fair, adequate and reasonable." Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).    "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

---

[4]    A class representative enhancement of approximately $20,000 is consistent with other stockbroker overtime settlements.    For example, in Bahramipour v. Citigroup Global Markets Inc., N.D. Cal. Case No. 04-4440, the Court awarded each class representative $20,000 as an enhancement.    See Order dated March 18, 2008, Exhibit 6 to Clapp declaration.

overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id.

As the Ninth Circuit has aptly recognized, "the very essence of a settlement is compromise." Id. at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) citing Officers for Justice at 625 (emphasis original).

In class action cases, Court approval is required for any settlement. Fed. R. Civ. P. 23(e). As explained in the Manual for Complex Litigation, Third, court approval of a class action settlement is a two-step process:

> First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation . . . . If the preliminary evaluation of the proposed settlement does not disclose ground to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of Plaintiffs or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. Id. at § 30.41, pp. 236-37.

The Court should grant preliminary approval to a proposed settlement if it falls "within the range of possible final approval." Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Conte & Newberg, Newberg on Class Actions (4th Ed. 2002), § 11:25 at pp. 38-39. Stated another way, preliminary approval is "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." In re Traffic Executive Association-Eastern Railroads, 627 F.2d 631, 634 (2nd Cir. 1980).

A settlement is <u>presumed</u> to be fair when: (1) it is reached through arm's-length negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have conducted sufficient discovery. <u>Manual for Complex Litigation, Third</u> § 30.42, p.240; <u>Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.</u>, 396 F.3d 96, 116 (2d Cir. 2005). Here, all of the factors giving rise to a presumption of fairness exist. First, the proposed settlement was the product of arm's-length, non-collusive negotiations, overseen by a well-respected mediator. Clapp declaration, ¶ 4. Second, Plaintiffs are represented by experienced counsel. <u>Id.</u>, ¶ 2. Third, before commencing settlement negotiations, the parties exchanged a significant amount of information, both formally and informally. <u>Id.</u>, ¶ 5. Both sides were thoroughly familiar with the facts of the case and the relative strengths and weaknesses of the claims and defenses.

Most importantly, the Settlement is fundamentally fair and reasonable considering the strength of Merrill Lynch's defenses and the risk, expense, complexity and delay associated with further litigation. <u>See Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998). As discussed above, Plaintiffs contend that individuals who were employed in the Covered Positions do not meet the test for exempt status under the FLSA or under state law.[5] At the time the Actions were filed, there were no reported authorities that addressed whether stockbrokers are exempt from overtime pay. However, on November 27, 2006, the U.S. Department of Labor issued an opinion letter holding that stockbrokers qualify as exempt under the FLSA's administrative exemption. <u>See</u> November 27, 2006 opinion letter, Exhibit 1 to Clapp declaration. Furthermore, in that same letter, the DOL opined that the type of draw-versus-

---

[5]     To the extent that this section summarizes Plaintiffs' position, it is not endorsed by Merrill Lynch. Moreover, both Defendant and Plaintiffs have summarized some of their important positions in this Motion. The Motion, however, does not set forth all such arguments or limit any party's rights to make additional or different arguments should the settlement not become effective.

commission pay structure employed by Merrill Lynch and most other brokerage houses meets the FLSA's salary basis test. Although Plaintiffs maintain that the DOL letter is not dispositive, the letter is significant because the Ninth Circuit has signaled an inclination to defer to the DOL when interpreting the FLSA's administrative exemption. See Miller v. Farmers Insurance Exchange, 481 F.3d 1119 (9th Cir. 2007) (reversing an award of $52.5 million in overtime pay to a class of Farmers claims adjusters, relying in part on a DOL opinion letter holding that claims adjusters are administratively exempt under the FLSA). In addition, at least one district court has agreed that stockbrokers are administratively exempt under the FLSA. Hein v. PNC Financial Services Group, Inc., 511 F. Supp. 2d 563, 575 (E.D. Pa. 2007).

Plaintiffs' wage deduction claims are also uncertain. No federal or state court has decided definitively whether a brokerage house may deduct business expenses from the commissions of its stockbrokers.[6] Plaintiffs have argued that the laws of many states prohibit deduction of business expenses from an employee's earned wages, but Merrill Lynch has countered that, under its applicable compensation plans, commissions do not become "earned" until after adjustments have been made for business expenses. Moreover, Merrill Lynch has argued that recent decisions support its position. See Pachter v. Bernard Hodes Group, Inc., 10 N.Y.3d 609 (2008) (holding that an employer could deduct business expenses as part of the calculation of incentive pay without violating New York law); Levy v. Verizon Information Servs., Inc., 498 F. Supp. 2d 586 (E.D.N.Y. 2007) (holding under New York and Pennsylvania law that where an incentive compensation formula includes adjustments at the end of a

---

[6]     The closest case is Takacs v. A.G. Edwards & Sons, Inc., 444 F. Supp. 2d 1100, 1122-25 (S.D. Cal. 2006), in which the district court held only that the legality of certain wage deductions was a triable issue of fact. Plaintiffs' counsel James F. Clapp also represented the plaintiffs in Takacs.

production period, compensation does not qualify as earned "wages" until after such adjustments are made).

In addition to the uncertainty of Plaintiffs' claims, another factor warranting settlement is the risk, expense, complexity and delay associated with further litigation. This dispute involves 11 separate class action cases brought on behalf of approximately 21,946 class members in 52 separate jurisdictions.  If these actions had not settled, class certification, discovery, and trial preparation would have been extremely time consuming and expensive. Clapp declaration, ¶ 8.

The history of the overtime class action against Farmers Insurance Exchange aptly illustrates the risk, delay, and expense associated with litigating an overtime class action.  That case, entitled In Re: Farmers Overtime Pay Litigation, MDL 33-1439, was an MDL proceeding consolidated in the District of Oregon before the Hon. Robert E. Jones.  The first case was originally filed in 2001.  In 2003, the District Court conducted a three-week bench trial, and on November 3, 2003, the Court ruled that certain claims adjusters were entitled to overtime pay. Id., 300 F. Supp. 2d 1020.  Subsequently, a $52.5 million judgment was entered for plaintiffs. However, on March 30, 2007, six years after the original lawsuit was filed, the Ninth Circuit reversed the District Court and entered judgment for Farmers on the FLSA claim.  Miller, supra, 481 F.3d 1119.  Like the Farmers case, this case involves a novel application of the overtime laws to positions that historically have been regarded as exempt.  The risk, expense, and delay associated with litigating such a case weighs in favor of approving the Settlement.

In this case, Merrill Lynch's exposure is difficult to quantify because, among other things, there are no time records that show how many overtime hours the Class members worked.  Merrill Lynch contends that it would have prevailed on all claims, and therefore that its exposure is zero.  Merrill Lynch further contends that if Plaintiffs had prevailed on class

certification and on all of their claims at trial (and assuming a high level of overtime) they would

have recovered no more than $200 million, and probably much less. Plaintiffs contend that, if

they had been successful at trial, the range of possible outcomes could have been from $200

million (assuming a low number of overtime hours) up to $1 billion (but only if the Plaintiffs

prevailed on their claim for liquidated "double" damages under 29 U.S.C. § 260).[7] In any event,

$43.5 million was the absolute most that Merrill Lynch was willing to pay in settlement;

Plaintiffs did not leave any money on the negotiating table. Clapp declaration, ¶ 9. Plaintiffs

respectfully submit that a $43.5 million recovery is fair and reasonable considering the strength

of Merrill Lynch's defenses and the risk and cost of further litigation, as discussed above.

Furthermore, the Settlement falls with in the range of other wage and hour settlements involving

stockbrokers employed by Merrill Lynch's direct competitors. For example, on March 18, 2008,

U.S. District Judge Claudia Wilken of the Northern District of California granted final approval

to a settlement involving financial advisors employed by Citigroup/Smith Barney. The amount

allocated to financial advisors outside of California was approximately $50 million. Clapp

declaration, ¶ 9. Similarly, on January 26, 2007, the U.S. District Judge Maxine M. Chesney of

the Northern District of California approved a $45 million settlement involving financial

advisors of UBS Financial Services. (The order granting final approval is currently on appeal.)

Id. Finally, on June 5, 2008, U.S. District Judge Dan Aaron Polster of the Northern District of

Ohio granted preliminary approval to a $19 million settlement involving financial advisors

---

[7]   Merrill Lynch contends that, in light of the November 27, 2006 opinion letter holding that
      stockbrokers are exempt, Plaintiffs had no chance to obtain liquidated damages under the
      FLSA. 29 U.S.C. § 260 (court has discretion to refuse to award liquidated damages if
      employer acted in good faith); see also Martinez v. Phillips Petroleum Co., 283 F. Supp.
      514 (D. Id. 1968) aff'd 424 F.2d 547 (9th Cir. 1970) (court refused to award liquidated
      damages because employer relied on letter from Department of Labor holding that
      employees were exempt).

employed by Edward Jones, another large brokerage house. Clapp declaration, ¶ 9. Thus, this Settlement falls well within the range that other courts have found to be reasonable.

## V.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

The parties jointly request that the Court certify for settlement purposes only: (1) the Collective Group with respect to Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b); and (2) the Class with respect to Plaintiffs' claims for overtime pay and reimbursement of business expenses under state law pursuant to Fed. R. Civ. P. 23(b)(3). Courts have routinely granted similar requests for certification to facilitate nationwide wage and hour settlements involving stockbrokers. See, e.g., "Order Granting Preliminary Approval of Class Action Settlement," Bahramipour v. Citigroup Global Markets, Inc., Case No. 04-04440 (N.D. Cal.), filed on March 2, 2007; "Order Granting Preliminary Approval of Settlement and Setting Final Approval Hearing," Glass v. UBS Financial Services, Inc., Case No. 06-4068 (N.D. Cal.), filed on August 25, 2006; "Order Granting Preliminary Approval of Class and Collective Action Settlement," Steinberg v. Morgan Stanley & Co. Inc., Case No. 06-2628 (S.D. Cal.), filed on January 8, 2008 (Exhibits 2-4 to Clapp declaration). Furthermore, the Hon. Robert E. Jones of this Court has ruled that an FLSA opt-in claim and a Rule 23 opt-out class claim may proceed simultaneously in the same lawsuit. See In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation, 2003 U.S. Dist. LEXIS 25717, *12-31 (D. Or. May 19, 2003) (granting Rule 23 class certification of state law overtime claims pursuant to the parties' stipulation, when Court had earlier certified an FLSA claim under Section 216(b) in the same case).[8] Other District Courts have reached the same conclusion as Judge Jones. Scott v. Aetna Services, Inc., 210

---

[8]    In Miller v. Farmers Insurance Exchange, supra, 481 F.3d 1119, the Ninth Circuit reversed some of Judge Jones' rulings on liability under the FLSA but did not disturb his procedural rulings on certification.

F.R.D. 261, 265-68 (D. Conn. 2002) (certifying state overtime claims under Rule 23 after previously certifying FLSA collective claim in the same case); Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001) (same, and specifically holding that court has supplemental jurisdiction over absent class members); Baas v. Dollar Tree Stores, Inc., 2007 U.S. Dist. LEXIS 65979, *13 (N.D. Cal. Aug. 29, 2007) (observing that courts in the Ninth Circuit have allowed plaintiffs to bring collective actions under the FLSA and state-law class action claims under Rule 23 together in the same action, citing 7 other cases). Moreover, in Bouder v. Prudential Financial, Inc., 2008 U.S. Dist. LEXIS 25103 (D.N.J., March 27, 2008), after a contested motion for conditional certification of a collective group of registered representatives under Section 216(b), the court granted plaintiff's motion and certified the collective group in an action where plaintiffs also asserted state-law class action claims.[9]

An FLSA claim may be certified under Section 216(b) where the putative collective action members are "similarly situated." 29 U.S.C. §216(b). In this case, Merrill Lynch's compensation policies as they apply to the Collective Group constitute a common issue in the context of this Settlement. Furthermore, according to Plaintiffs' investigation, Plaintiffs believe that there is a large degree of similarity in the work experiences of the Collective Group

---

[9]    One district court in the Western District of Pennsylvania recently refused to allow an FLSA claim and state law class claims to proceed in the same action, holding that the "opt-in" and "opt-out" procedures are incompatible. Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 443-47 (W.D. Pa. 2007). However, the fundamental distinction between Ellis and this case is that in Ellis, the parties were trying to effect a release of the FLSA rights of class members who did not opt-in. Id. at 447. Such a provision is incompatible with 29 U.S.C. section 216(b), as the Ellis court found. Id. at 447. In this case, by contrast, a class member's substantive FLSA rights are unaffected unless he or she affirmatively opts-in pursuant to Section 216(b). See Stipulation, Section V, ¶ 1.35. Unlike the parties in Ellis, the parties here are not trying to make an end-run around the opt-in provisions of the FLSA. The parties respectfully request that the Court should follow the decision of Judge Jones and other District Courts in this Circuit and certify both the FLSA and Rule 23 claims for settlement purposes.

members. Clapp declaration, ¶ 11. Thus, for settlement purposes, Plaintiffs contend that the Collective Group members are "similarly situated" for purposes of Section 216(b).

Next, the Court should certify the Class with respect to Plaintiffs' second and third claims pursuant to Fed. R. Civ. P. 23. All of the requirements of Rule 23 are met. First, under Rule 23(a)(1), the class must be so numerous that joinder of all members would be "impracticable." Id. In this case, the parties stipulate that the Class consists of approximately 21,946 members, so the numerosity requirement is satisfied. Clapp declaration, ¶ 12.

Second, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Id. Ninth Circuit case law currently suggests that Rule 23(a)(2) should be construed "permissively." Hanlon, supra, 150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. Id. at 1019. In this case, Merrill Lynch categorically classifies all Financial Advisors as exempt without regard to potential variations in their experience level, clientele, production level, or sales strategy, and hence Plaintiffs contend that the Financial Advisors' exempt status may be decided on a classwide basis. Likewise, Merrill Lynch maintains some uniform expense policies applicable to Financial Advisors, some of whom pay all or some wages to obtain additional staff support and/or are held responsible for some losses due to trading errors when there was no final judicial determination of liability on the part of the Financial Advisor. Further, Plaintiffs contend that whether Merrill Lynch willfully failed to pay overtime wages and expense reimbursements to Financial Advisors who left employment is also a common issue. These "shared legal issues" are sufficient to support certification under Rule 23(a)(2) in the context of settlement. Clapp declaration, ¶ 12.

Third, Rule 23(a)(3) requires that the class representatives' claims be typical of the claims of the class. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. The standard for typicality in the settlement context, like that for commonality, is "permissive." Id. Here, Plaintiffs contend that the claims of the named Plaintiffs are typical of the claims of members of the class regarding the denial of overtime pay and the adjustment of incentive compensation for business expenses as a result of Merrill Lynch's policies and practices. Likewise, Plaintiffs contend that their claims for waiting time penalties are typical of those of former Financial Advisors who were allegedly denied proper payment of their wages as a result of Merrill Lynch's pay practices. Clapp declaration, ¶ 12.

Finally, Rule 23(a)(4) requires that Plaintiffs must "fairly and adequately protect the interests of the class." Id. The named plaintiffs are adequate when: (1) they have retained attorneys who are qualified, experienced, and generally able to conduct the litigation, and (2) they do not have interests that are antagonistic to those of the remainder of the class. Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001). Both elements are satisfied in the context of this Settlement. As set forth in the Clapp declaration, Plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation on behalf of the class members. Furthermore, Plaintiffs contend that they have no interests that are adverse to those of the other class members. Clapp declaration, ¶¶ 2, 12.

Under Rule 23(b)(3), a class should be certified when common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. As one Ninth Circuit opinion explains: "Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common issues present a

significant aspect of the case and they can be resolved for all members of the class in a single

adjudication, there is a clear justification for handling the dispute on a representative rather than

on an individual basis." Local Joint Executive Board, supra, 244 F.3d at 1162. "[T]he

fundamental question is whether the group aspiring to class status is seeking to remedy a

common legal grievance." Lockwood Motors v. General Motors Corp., 162 F.R.D. 569, 580 (D.

Minn. 1995). Here, as previously discussed, Plaintiffs believe common issues predominate,

because the class members seek to remedy "common legal grievances" – namely, the allegedly

improper classification of Financial Advisors as exempt employees, Merrill Lynch's failure to

pay overtime pay, and/or the illegal shifting of the employers' business expenses to them.

Plaintiffs contend that each of these common questions may be resolved by on a classwide basis

by common proof.[10]

Further, the additional superiority inquiry under Rules 23(b)(3) involves "a comparative

evaluation of alternative mechanisms for dispute resolution." Hanlon, supra, at 1023. In the

case of overtime claims, the Ninth Circuit has held that, in appropriate circumstances, a single

class action is preferable to a multitude of individual lawsuits, since "[n]umerous individual

actions would be expensive and time consuming and would create a danger of conflicting

decisions as to persons similarly situated." Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d

507, 512-13 (9th Cir. 1978). In this case, requiring up to 21,946 Class members to file individual

lawsuits – either in this District or elsewhere throughout the country – would needlessly waste

judicial resources in the event of litigation, since Plaintiffs contend that each lawsuit would

---

[10]     While Merrill Lynch agrees that certification for settlement purposes is appropriate here,
it believes that a different analysis would apply outside the context of settlement. In the
litigation context, among other things, the calculus of whether common issues
predominate and whether a class action is a superior method of adjudication would be
very different.

likely involve the same evidence regarding Merrill Lynch's policies and procedures, its pay practices, and the duties and responsibilities of Financial Advisors. Thus, Plaintiffs believe that the most efficient way of adjudicating these claims is through a single class action, such as the present action, before a single factfinder.

## VI.    CONCLUSION

For the foregoing reasons, the Plaintiffs and Merrill Lynch jointly and respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) conditionally certify, for settlement purposes only, the Collective Group with respect to Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b); (3) conditionally certify, for settlement purposes only, the Class with respect to Plaintiffs' state law overtime and wage deduction claims pursuant to Fed. R. Civ. P. 23(b)(3); (4) order the Plaintiffs, Merrill Lynch, and the class members not to proceed with further litigation in any of the pending actions that are the subject of the Settlement pending the Court's decision on final approval of the Settlement; (5) order putative class members not to file any new actions asserting claims that are being released under the Settlement (except for individual FLSA claims by those who do not release such claims by opting in to the Settlement) pending the Court's decision on final approval of the Settlement; and (6) appoint the Hon. Edwin J. Peterson (Ret.) as Special Master, pursuant to Fed. R. Civ. P. 53(a)(1)(A), to make a recommendation regarding the allocation of settlement proceeds.

Upon receipt of Justice Peterson's written recommendation, the parties will return to this Court and ask the Court to: (1) incorporate the proposed allocation into the class notice; (2) approve and authorize the mailing of the notice; and (3) set a final fairness hearing.

Dated:  August 27, 2008                    Submitted By,

                                                              SWANSON THOMAS & COON

                                                              By: s / James S. Coon
                                                                 JAMES S. COON
                                                                 Oregon State Bar No. 771450
                                                                 (503) 228-5222
                                            Attorneys for Plaintiff Jeffrey Poole, and, as
                                            authorized, as Attorneys for all Plaintiffs

                                                              LITTLER MENDELSON, PC

                                              By: s/ Leigh Ann Collings Tift
                                                                LEIGH ANN COLLINGS TIFT
                                                                Oregon State Bar No. 054732
                                                                (206) 623-3300
                                            Attorneys for Defendant Merrill Lynch, Pierce,
                                            Fenner & Smith Incorporated

Additional Attorneys for the Plaintiffs:

JAMES F. CLAPP
jclapp@sdlaw.com
DOSTART, CLAPP, GORDON &
        COVENEY, LLP
4370 La Jolla Village Drive
Suite 970
San Diego, CA 92122
Tel:    (858) 623-4200
Fax:    (858) 623-4299
Attorneys for Plaintiffs Edward C. Reinhart
and Jeffrey Poole

KENNETH LEHN
klehn@winnebanta.com
EDWARD P. D'ALESSIO
edalessio@winnebanta.com
WINNE, BANTA, HETHERINGTON,
        BASRALIAN & KAHN, P.C.
Court Plaza South
21 Main Street
P.O. Box 647
Hackensack, New Jersey 07601
Tel:    (201) 487-3800
Fax:    (201) 487-8529
Attorneys for Plaintiffs Winsome P. Carter,
James C. Howell, Jeffrey Kemp, Andrea
Loughlin, Henry V. M. Multala, Burkhard
Spring and Robert Traitz

NORMAN SHABEL
nshabel@shabeldenittis.com
STEPHEN P. DENITTIS
sdenittis@shabeldenittis.com
SHABEL & DENITTIS, P.C.
5 Greentree Centre, Suite 302
Marlton, New Jersey 08053
Tel:    (856) 797-9951
Fax:    (856) 797-9978
Attorneys for Plaintiff Edward France

JEFFREY G. SMITH
smith@whafh.com
ROBERT ABRAMS
abrams@whafh.com
WOLF HALDENSTEIN ADLER
        FREEMAN & HERZ, LLP
270 Madison Avenue
New York, NY 10016
Tel:    (212) 545-4600
Fax:    (212) 545-46 53
Attorneys for Plaintiffs Anthony Palumbo,
Mary O'Reilly and Peter R. Garrison

JERRY K. CIMMET
cimmet@att.net
Attorney at Law
177 Bovet Road, Suite 600
San Mateo, CA 94402
Tel:    (650) 866-4700
Fax:    (650) 866-4770
Attorney for Plaintiffs Winsome P. Carter,
James C. Howell, Jeffrey Kemp, Andrea
Loughlin, Henry V. M. Multala, Burkhard
Spring and Robert Traitz

RICHARD GLICKMAN
glickmanlawcorp@yahoo.com
One Maritime Plaza
Suite 1600
San Francisco, CA 94111
Tel:    (415) 362-7685
Fax:    (415) 781-1034
Attorney for Plaintiffs Anthony Palumbo and
Peter R. Garrison

H. TIM HOFFMAN
hth@hoffmanandlazear.com
ARTHUR W. LAZEAR
awl@hoffmanandlazear.com
HOFFMAN & LAZEAR
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Tel:    (510) 763-5700
Fax:    (510) 835-1311
Attorneys for Plaintiff Jeffrey Poole

PHILIP STEPHEN FUOCO
pfuoco@msn.com
JOSEPH OSEFCHEN
josefchen@msn.com
LAW FIRM OF
PHILIP STEPHEN FUOCO
24 Wilkins Place
Haddonfield, New Jersey 08033
Tel:    (856) 354-1100
Attorneys for Plaintiff Edward France

LEON GREENBERG
wagelaw@hotmail.com
Attorney at Law
633 South 4th Street - Suite 9
Las Vegas, Nevada 89101
Tel:    (702) 383-6085
Fax:    (702) 385-1827
Attorney for Plaintiff David Bachrach

JOHN M. KELSON
kelsonlaw@sbcglobal.net
LAW OFFICE OF JOHN M. KELSON
1999 Harrison Street, Suite 700
Oakland, CA  94612
Tel:    (510) 465-1326
Fax:    (510) 465-0871
Attorney for Plaintiffs Winsome P. Carter,
James C. Howell, Jeffrey Kemp, Andrea
Loughlin, Henry V. M. Multala, Burkhard
Spring and Robert Traitz

Additional Attorneys for the Plaintiffs:

MARK THIERMAN
laborlawyer@pacbell.net
THIERMAN LAW FIRM
7287 Lakeside Drive
Reno, NV 89571
Tel:    (775) 284-1500
Fax:    (775) 703-5027
Attorneys for Plaintiff David Bachrach


CHRISTOPHER J. GRAY
gray@cjgraylaw.com
LAW OFFICES OF
CHRISTOPHER J. GRAY, P.C.
460 Park Avenue, 21st Floor
New York, New York 10022
Tel:    (212) 838-3221
Fax:    (212) 508-3695
Attorneys for Plaintiff Michael Wendling

JOHN HALEBIAN
jhalebian@lshllp.com
LOVELL STEWART &
       HALEBIAN, LLP
500 Fifth Avenue, 58th Floor
New York, NY 10110
Tel:    (212) 608-1900
Fax:    (212) 719-4677
Attorneys for Plaintiffs Jeffrey Kemp, Andrea
Loughlin, James C. Howell, Robert Traitz,
Burkhard Spring, Henry V. M. Multala,
Winsome P. Carter and Richard J. Testa, Jr.

MICHAEL P. LYNN, P.C.
mlynn@lynnllp.com
CODY L. TOWNS
ctowns@lynnllp.com
LYNN TILLOTSON & PINKER, LLP
750 N. St. Paul Street, Suite 1400
Dallas, Texas 75201
Tel:    (214) 981-3800
Fax:    (214) 981-3839
Attorneys for Plaintiff Michael Wendling

LOUIS F. BURKE
lburke@lfblaw.com
LOUIS F. BURKE, P.C.
460 Park Avenue, 21st Floor
New York, New York 10022
Tel:    (212) 682-1700
Fax:    (212) 808-4280
Attorney for Plaintiff Michael Wendling

Additional Attorneys for the Defendant:

TERRY E. SANCHEZ
MALCOLM A. HEINICKE
KATHERINE M. FORSTER
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
Tel:   (213) 683-9100
Fax:   (213) 687-3702